## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| Leroy M. Smith, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>John E. Potter, Postmaster General, )<br>United States Postal Service, )<br>)<br>)<br>Defendant. )<br>_____) | Case No. 05-2149-JWL |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff filed suit against defendant John E. Potter alleging violations of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment

Act (ADEA), 29 U.S.C. § 621 et seq.  This matter is presently before the court on defendant's

motion for summary judgment and motion to dismiss discrete claims for lack of jurisdiction (doc.

83).  As will be explained, the motion is **denied** with respect to plaintiff's claim that his age was

a factor in defendant's decision to issue a Letter of Warning to plaintiff and is **otherwise**

**granted**; defendant may file a subsequent motion for summary judgment with respect to

plaintiff's age discrimination claim on or before **Wednesday, November 22, 2006**.  In the

meantime, the current trial setting of November 28, 2006 is vacated.

## I.     Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party.  Plaintiff is a 55-year-old African-American male who worked at the Kansas City, Kansas Bulk Mail Center of the United States Postal Service from October 1992 through August 2004.  Plaintiff's employment passed without incident until August 2001, when he testified at a union grievance hearing on behalf of two coworkers who challenged defendant's decision to deny them light duty assignments during a period when each was using crutches.  According to plaintiff, his supervisors began harassing him and discriminating against him soon after he participated in the grievance hearing.  Plaintiff, for example, asserts that he was constantly paged by his supervisors when he was taking a cigarette break or otherwise away from his assigned work area while Caucasian employees were not paged in similar circumstances.  He asserts that his supervisors, particularly his direct supervisor at the time, Patti Ashley Zimmerman, assigned plaintiff to less desirable tasks despite plaintiff's seniority and that Caucasian employees were given more favorable assignments.  He contends that his supervisors "watched" him for the purpose of "intimidation."  He further contends that on several occasions Bruce King, the Manager of Distribution Operations at the Bulk Mailing Center, sent various plant managers to plaintiff's work area to "harass" him and give him direct orders when such orders should have come only from plaintiff's direct supervisors.  According to plaintiff, this "harassment" continued from September 2001 and throughout 2002.

In early October 2002, plaintiff filed an EEO complaint asserting that Ms. Zimmerman and Mr. King subjected plaintiff to "extreme disciplinary actions and harassment" on the basis

of plaintiff's sex and race and in retaliation for plaintiff's engaging in protected activity. Plaintiff also alleged in his complaint that he was not given the opportunity for "higher level assignments" and that he had been "passed over" on numerous occasions. Defendant's Final Agency Decision dismissed plaintiff's EEO complaint as untimely and plaintiff did not file a complaint in federal court within 90 days of receiving defendant's decision. Thus, this court, in a prior memorandum and order, has held that it lacks jurisdiction over claims asserted by plaintiff that are based solely on plaintiff's first EEO complaint.

On October 8, 2002, plaintiff was absent from his assigned work area for approximately 30 minutes without authorization. Thereafter, Mark Devine, one of plaintiff's supervisors, instructed plaintiff to stay in his assigned work area and to notify a supervisor if he needed to leave his area. Mr. Devine advised Randy Stalker, plaintiff's direct supervisor since late September 2002, that plaintiff had been absent from his work area without authorization and that Mr. Devine had cautioned plaintiff that he needed to obtain permission to leave his assigned work area in the future. On October 22, 2002, another supervisor, Dale Prochaska, advised Mr. Stalker that plaintiff had again left his assigned work area without permission for more than 30 minutes. As a result, Mr. Stalker, on October 30, 2002, issued a Letter of Warning to plaintiff based on plaintiff's unauthorized absence from his work area on October 22, 2002 after he had been instructed to seek permission before leaving the unit. Mr. King signed the Letter of Warning as the reviewing authority. Plaintiff does not dispute that he was absent from his work area on October 8, 2002 and October 22, 2002 nor does he dispute that he did not seek permission to leave the unit on these days. Plaintiff, however, contends that he was not absent

for 30 minutes, but only for 15 minutes or so.

Plaintiff contends that, in addition to the Letter of Warning, he continued to suffer ill treatment at the hands of his supervisors for the remainder of 2002 and into 2003.  He contends, for example, that Mr. Devine, in December 2002, shouted at plaintiff in the presence of other employees and that another supervisor, Gary Wofford, yelled threatening remarks at plaintiff. He asserts that his supervisors "stalked" him, constantly intimidated him and generally scrutinized his work more closely than other employees.  In January 2003, plaintiff filed his second EEO complaint, this time asserting that Mr. Stalker and Mr. King, by issuing the Letter of Warning, had discriminated against plaintiff on the basis of race and age and in retaliation for engaging in protected activity.  Several months later, in July 2003, plaintiff filed an investigative affidavit in support of his formal complaint in which he set forth numerous allegations concerning a variety of supervisors.

Plaintiff asserts that the mistreatment he received from his supervisors went unabated until August 2004, when plaintiff left work for medical reasons.  Although plaintiff initially planned to return to work when he was released to do so by his doctor, he ultimately decided to apply for disability retirement benefits.  His application was approved and plaintiff, after August 2004, did not return to work.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III.    Discrete Claims of Discrimination and Retaliation

In the pretrial order, plaintiff has preserved the following discrete claims of discrimination and retaliation:[1]

* * * *

c.      During the period September 2001 through September 2002, Zimmerman assigned Caucasian employees superior jobs with higher rates of compensation despite the Plaintiff having seniority over them; other

---

[1]The pretrial order entered in this case supersedes the parties' pleadings and controls the subsequent course of the case. Fed. R. Civ. P. 16(e); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). Thus, to the extent plaintiff alleged discrete claims of discrimination or retaliation in his complaint, in his amended complaint or in his summary judgment papers other than those appearing in the pretrial order, those claims are waived. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims, issues, defenses, or theories of damages not included in the pretrial order are waived); *accord Youren*, 343 F.3d at 1304.

managers began doing the same.

\* \* \* \*

e.      Supervisor Randy Stalker threatened the Plaintiff for having left the unit
        supervised by Stalker resulting in a letter of warning of October 30, 2002.

\* \* \* \*

m.      On December 3, 2002, Devine began putting his finger in the face of the
        Plaintiff, nearly touching his nose, and shouting at him in the presence of
        other employees; Devine told Wofford he was having a problem with the
        Plaintiff wherein Wofford ran up to the Plaintiff and put a finger within
        one-half of an inch from his nose and yelled threatening remarks.

\* \* \* \*

t.      During 2004, David Reid, one of Plaintiff's supervisors, (i) requested that
        the Plaintiff perform work normally performed by one subordinate to him;
        (ii) continually assigned work to subordinates of the Plaintiff for which the
        Plaintiff was competent; (iii) ordered the Plaintiff to clear a jam on a feed
        system, which he refused to do as it constituted a hazardous situation that
        he was not qualified to remediate; and (iv) then threatened to walk the
        Plaintiff out and write a report, yelled at him in a degrading, physically
        aggressive and threatening manner while in the presence of co-workers,
        referred to him utilizing a pejorative term, and lied to a superior as to what
        he had ordered the Plaintiff to do.

Defendant moves to dismiss the discrete claims set forth in subparagraphs (c), (m) and

(t) of Paragraph 5 of the pretrial order for lack of subject matter jurisdiction based on plaintiff's

failure to exhaust his administrative remedies with respect to these claims.[2]  Defendant moves

---

[2]Defendant moves to dismiss several other allegedly discrete claims for lack of subject
matter jurisdiction based on plaintiff's failure to exhaust administrative remedies, such as
those claims set forth in subparagraphs (a), (b), (f), (g), (r) and (s) of Paragraph 5 of the
pretrial order.  The court, however, does not construe these claims as discrete claims.
Subparagraph (a), for example, simply identifies the allegedly protected activity that plaintiff
engaged in for purposes of his retaliation claims ("The Plaintiff testified in August 2001 on

for summary judgment on the merits of the claim set forth in subparagraph (e) of Paragraph 5 of the pretrial order.

A.      *Failure to Exhaust Administrative Remedies*

In subparagraph (c) of Paragraph 5 of the pretrial order, plaintiff challenges job assignments made between September 2001 and September 2002. This claim, however, was the subject of plaintiff's first EEO complaint. The court has already determined that it lacks jurisdiction over claims based solely on plaintiff's first EEO complaint because plaintiff filed his federal court complaint more than 90 days after receiving notice of the agency's final decision dismissing the complaint as untimely. *See* Memorandum & Order p. 4 (Nov. 18, 2005). Moreover, while plaintiff appears to reiterate this claim in the investigative affidavit filed in support of his second EEO complaint,[3] the claim remains untimely. At the most, the allegations in the investigative affidavit would be timely only as to conduct occurring within 45 days preceding the January 2003 complaint and, at the very least, within 45 days preceding the July 2003 affidavit. *See* 29 C.F.R. § 1614.105(a)(1) (federal employee must bring administrative

_____

behalf of employees Michelle Fitzpatrick and Jeff Thomas in their case against management of the USPS and Bruce King."). Subparagraphs (b), (f), (g), (r) and (s) set forth the factual bases for plaintiff's harassment claims and describe the "persistent paging," "stalking" and staring to which plaintiff was allegedly subjected as well as unspecified "harassing" conduct to which he was allegedly subjected.

[3]The August 14, 2002 entry in plaintiff's affidavit states that Ms. Zimmerman "is always finding the most difficult jobs for me and always sending white male and female employees to better jobs."

8

complaint within 45 days of the conduct giving rise to the complaint). Either way, plaintiff cannot revive claims from September 2002 simply by articulating those claims in a July 2003 investigative affidavit. *See Longo v. Regis Jesuit High Sch. Corp.*, 2006 WL 197336, at *10 (D. Colo. Jan. 25, 2006) (allegations in affidavit filed in support of charge are timely only as to conduct that occurred within 300 days preceding charge if affidavit relates back to charge, or as to conduct within 300 days preceding affidavit if does not relate back to charge) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998)); *Butler v. Potter*, 345 F. Supp. 2d 844, 851 (E.D.Tenn. 2004) (setting forth claim in investigative affidavit cannot revive a claim that is otherwise untimely).

The court also lacks jurisdiction over the claims set forth in subparagraphs (m) and (t) of Paragraph 5 of the pretrial order as these claims have never been the subject of a formal EEO complaint and are not set forth in any sworn statements filed in support of a formal charge. *See Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997) (as a prerequisite to suit, federal employee must file an administrative complaint concerning his allegations). While plaintiff contends that these claims are "reasonably related" to claims set forth in his second EEO complaint, the "reasonably related" doctrine no longer applies in the context of discrete claims of discrimination and each discrete claim must be the subject of a charge. As the Tenth Circuit explained in *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), "unexhausted claims involving discrete employment actions are no longer viable" in light of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Under *Morgan*, each discrete incident of discrimination constitutes a separate actionable unlawful

employment practice and, thus, a plaintiff must exhaust his or her remedies with respect to each act. *See id.* at 1210-11; accord Morgan, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.").[4] The court, then, lacks jurisdiction over the discrete claims set forth in subparagraphs (m) and (t) of Paragraph 5 of the pretrial order.

B.    *Claim Based on October 30, 2002 Letter of Warning*

    In the pretrial order, plaintiff asserts that defendant issued him a Letter of Warning on October 30, 2002 on the basis of plaintiff's race, on the basis of plaintiff's age and/or in retaliation for plaintiff's testimony at a union grievance hearing in August 2001.  Defendant moves for summary judgment on the merits of this claim.  As will be explained, summary judgment is denied with respect to plaintiff's claim that his age was a factor in defendant's decision to issue the Letter of Warning and is otherwise granted.

1.    Race

---

[4]As Judge Tacha succinctly explained in an unpublished opinion:

Prior to 2002, Tenth Circuit law allowed a party to include in a civil claim those acts that were "like or reasonably related to the allegation of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Ingels*, 42 F.3d at 625. Whatever the exact scope of that rule was, it is no longer the law.

*Tucker v. Colorado Dept. of Public Health & Env't*, 2004 WL 1632805 (10th Cir. July 22, 2004).

Plaintiff also claims that defendant issued him the October 30, 2002 Letter of Warning based on plaintiff's race. As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Antonio v. The Sygma Network, Inc.,* 458 F.3d 1177, 1181 (10th Cir. 2006). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. *See id.* If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment decision. *See id.* If defendant offers a legitimate, nondiscriminatory reason for its action, summary judgment against plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether defendant's reason is pretextual. *See id.*; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).

Defendant moves for summary judgment on this claim on the grounds that plaintiff cannot show that Defendant also contends that plaintiff cannot show that defendant's asserted legitimate, nondiscriminatory reason for terminating plaintiff's employment is pretextual.[5] According to defendant, Randy Stalker issued plaintiff the Letter of Warning because plaintiff, on October 22, 2002, left his assigned work area without notifying his supervisor after he had been verbally warned on October 8, 2002 (again, after leaving his assigned area without notifying his supervisor) to notify his supervisor whenever he needed to leave his assigned area.

---

[5]While defendant's summary judgment brief contains one sentence which states "Plaintiff cannot establish the third element of his prima facie case," defendant has offered no argument in support of this assertion and moves directly into its argument concerning pretext.

Defendant has met its "exceedingly light" burden of production, *see Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002), and the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretext. *See Antonio v. The Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

While plaintiff disputes the amount of time that he was absent from his assigned work area, he does not dispute that he left his assigned work area on October 8, 2002 and October 22, 2002 without notifying his supervisor and he does not dispute that he had been warned on October 8, 2002 to notify his supervisor whenever he needed to leave his assigned work area. Thus, in an effort to show that defendant's proffered reason is pretextual, plaintiff contends that Caucasian employees frequently left their assigned work areas and that these employees were never disciplined for leaving the work area. Plaintiff, for example, testified in his deposition that Caucasian employees left their assigned work areas for cigarette breaks and to read books and were not disciplined. Similarly, plaintiff, in his affidavit, provides numerous specific examples of Caucasian employees who left their work stations for various reasons without discipline.

While a plaintiff may certainly show pretext by "providing evidence that he was treated

differently from other similarly-situated employees who violated work rules of comparable seriousness," *Metzler v. Federal Home Loan Bank of Topeka*, ___ F.3d ___, 2006 WL 2733112, at *9 (10th Cir. Sept. 26, 2006), plaintiff has not shown that the Caucasian employees to whom he seeks to compare himself are "similarly situated" to plaintiff. Significantly, plaintiff has not shown (or even alleged) that the Caucasian employees who left their assigned work areas and were not disciplined, like plaintiff, did not have permission to do so. In other words, these Caucasian employees would be "similarly situated" to plaintiff only if plaintiff showed that they did not have permission to leave their assigned work areas and plaintiff's evidence does not address this issue. Without evidence concerning whether these other employees had permission to leave their work areas, no reasonable jury could ascertain whether these employees violated the same work rule–leaving his or her assigned work area without permission–as plaintiff. *See id.*[6] Moreover, plaintiff has set forth no evidence concerning whether the supervisors of these Caucasian employees had knowledge that the employees had left their work areas on the occasions cited by plaintiff. *See Doke v. PPG Indus., Inc.*, 2003 WL 21355926, at *4 (D. Kan.

---

[6]In another part of his deposition, plaintiff generally testified that "no one else had to inform" a supervisor that they were leaving the work area and that plaintiff was "singled out." This evidence, however, does not establish pretext for purposes of plaintiff's race discrimination claim because it does not suggest that Caucasian employees were treated more favorably than plaintiff; rather, it suggests that all employees–white and black–were treated more favorably than plaintiff. The evidence is, however, consistent with what appears to be the primary thrust of plaintiff's complaint–that defendant singled plaintiff out after he testified on behalf of his coworkers at a union grievance hearing. In that regard, in the argument section of plaintiff's summary judgment response concerning his racial discrimination claim, plaintiff states that he began to experience "discrimination subsequent to his testifying in August, 2001 on behalf of USPS employees Fitzpatrick and Thomas in their case against management."

June 10, 2003) (in attempting to show disparate treatment through comparison to similarly situated employees, the relevant inquiry is whether management knew about the other employee's behavior), *aff'd*, 2004 WL 2677688 (10th Cir. Nov. 24, 2004) (without evidence that relevant decisionmakers had knowledge of other employees' violations, evidence "just tends to show that his fellow . . . employees were better at escaping detection than [plaintiff] was"). Finally, plaintiff has not set forth any evidence concerning whether the Caucasian employees were leaving their assigned work areas while working for the same supervisors who required plaintiff to seek permission prior to leaving his work area. For this reason, too, no reasonable jury could ascertain whether these other employees are similarly situated to plaintiff for purposes of establishing pretext. *See Metzler*, ___ F.3d at ___, 2006 WL 2733112, at *9 ("[P]retext cannot be inferred where, for example, one supervisor treats one employee one way and another supervisor treats another employee a different way" because "different supervisors will inevitably react differently to employee insubordination."); *Doke*, 2004 WL 2677688, at *3 (to demonstrate pretext by comparison to "similarly situated" employees, plaintiff must show that individual who made decision adverse to plaintiff had knowledge of other employees' violations and treated those employees differently).

Plaintiff also attempts to establish pretext with evidence that various supervisors other than those involved in the issuance of the Letter of Warning (*i.e.*, Ashley Zimmerman, Gary Wofford, Steve Stahl, Bruce King and David Reid) treated Caucasian employees more favorably than plaintiff in other contexts (e.g., job assignments) or singled plaintiff out amongst all employees. This evidence, too, is insufficient to establish pretext with respect to his claim that

14

he received the Letter of Warning based on plaintiff's race.  To the extent he contends that these supervisors singled him out for mistreatment amongst all employees, that evidence is irrelevant to his claim of race discrimination.  *See supra* note 6.  To the extent he suggests that these other supervisors–none of whom were involved in the issuance of the Letter of Warning–treated Caucasian employees more favorably than him, that evidence simply does not tend to show pretext with respect to his claim concerning the Letter of Warning.  In other words, even assuming that these other supervisors bore some discriminatory animus toward plaintiff, plaintiff cannot establish pretext absent evidence that these other supervisors were involved in or influenced the decision to issue the Letter of Warning.  *See Jackson v. NTMedia LLC*, 2006 WL 2130441, at *11 (10th Cir. Aug. 1, 2006) (To establish pretext, any alleged animus on the part of a supervisor is relevant only if that supervisor participated in or influenced the adverse employment action); *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487-88 (10th Cir. 2006).

Finally, plaintiff suggests that Mr. Stalker bore some discriminatory animus toward African-Americans in general.  To support this assertion, plaintiff highlights his own deposition in which he testified that, prior to joining the unit supervised by Mr. Stalker, he had "heard" from other African-American employees that Mr. Stalker treated African-Americans more harshly and issued disciplinary reports concerning African-Americans more frequently than he issued reports concerning Caucasian employees.  Plaintiff also testified that while working for Mr. Stalker, plaintiff observed that other African-Americans were disciplined by Mr. Stalker for "racially motivated" reasons.  The Tenth Circuit has recognized that evidence of discrimination

15

in employment decisions affecting other African-American workers can support an inference that the decision makers harbored a bias against African-Americans which might have affected other decisions, including the decisions adverse to the plaintiff. *See BCI Coca-Cola Bottling Co.*, 450 F.3d at 489.

Plaintiff's evidence, however, falls short of establishing pretext. Plaintiff's testimony that he "heard" about Mr. Stalker's alleged disparate treatment of African-American employees is clearly not based on personal knowledge and is hearsay that does not fall within a recognized exception. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1405 (10th Cir. 1997) (plaintiff's deposition testimony concerning alleged disparate treatment by supervisor was based on "shop talk" and, thus, was inadmissible under Rule 56). Plaintiff's testimony concerning his observation that Mr. Stalker disciplined African-American employees for racially motivated reasons is entirely conclusory. Specifically, plaintiff testified that Mr. Stalker disciplined Johnny Turner, Kenny Steward and Anita Reid, other African-American employees, for "attendance." Plaintiff testified, however, that he had no knowledge of whether these employees were absent on the day or days for which they were disciplined and he had no knowledge of their attendance records. Nonetheless, plaintiff testified that even if the discipline was warranted, he believes, without further explanation and without comparison to the treatment of Caucasian employees, that it was "racially motivated." The record, then, is devoid of specific facts from which a reasonable jury could conclude that Mr. Stalker's decision to discipline Mr. Turner, Mr. Steward or Ms. Reid was racially motivated.

Plaintiff offers no other evidence to show that defendant's proffered reason for issuing

16

the Letter of Warning is pretextual and he concedes that no one involved in the decision to issue the Letter of Warning ever used a racial epithet, told a racial joke or made any race-based remark whatsoever.  Summary judgment, then, is granted in favor of defendant on plaintiff's claim that defendant issued the Letter of Warning based on plaintiff's race.

2.      Age

To the extent plaintiff alleges in the pretrial order that he received the Letter of Warning based on his age, defendant moves for summary judgment on the grounds that plaintiff, in his initial complaint, "admitted" that age was not a factor in the decision to give plaintiff the Letter of Warning.  Specifically, plaintiff attached to his pro se complaint the EEO investigative affidavit submitted by Randy Stalker in connection with the investigation of plaintiff's EEO complaint.  In his affidavit, Mr. Stalker avers, among other things, as follows:

> The complainant's race was never a factor in my decision to give him a Letter of Warning.  I did not know the complainant's age before I read it on page 1 of these affidavit questions on August 21, 2003.  His age was never a factor in my decision to give him a Letter of Warning.

Plaintiff made handwritten notations on the copy of Mr. Stalker's affidavit that plaintiff attached to his complaint.  Underneath the first sentence written by Mr. Stalker–"The complainant's race was never a factor in my decision to give him a Letter of Warning"–plaintiff wrote "My race was the only factor."  Underneath the next two sentences written by Mr. Stalker regarding plaintiff's age, plaintiff wrote "He [sic] right on the age factor.  It's the hostile environment created by management."  In his deposition, plaintiff confirmed that the handwriting on Mr. Stalker's

affidavit was his handwriting and that the notations made by him were accurate at the time the complaint was filed.

According to defendant, plaintiff's "admission" that "race was the only factor" in the decision to issue the Letter of Warning and that Mr. Stalker was "right" about age not contributing to the decision mandates summary judgment in favor of defendant on plaintiff's age discrimination claim. In his response to the motion for summary judgment, plaintiff does not dispute the statements that he wrote on the exhibit to his complaint and it is not entirely clear whether plaintiff intends to pursue a claim of age discrimination based on the Letter of Warning. Indeed, plaintiff's only response to defendant's argument is to highlight several other instances in which supervisors who were not involved with the Letter of Warning allegedly treated younger employees more favorably than plaintiff. To the extent plaintiff suggests that he should be able to proceed with discrete claims based on these instances of alleged discrimination, plaintiff has not shown that the court has jurisdiction over such claims. In other words, he has not shown (and the record does not reflect) that he has exhausted his administrative remedies with respect to such claims or that the claims, even if set forth in an administrative charge, were timely presented to the agency. Moreover, these discrete claims have not been preserved in the pretrial order. Thus, the only discrete claim of age discrimination properly before the court in one based on the Letter of Warning that plaintiff received.

The court, then, turns back to–and rejects–defendant's argument that plaintiff's "admission" warrants summary judgment in favor of defendant. Contrary to defendant's suggestion, assertions made in a superseded pleading (the complaint in this case has been

superseded by the pretrial order) are not binding judicial admissions but are treated instead as ordinary evidentiary admissions. *See O'Hearon v. Castleview Hosp.*, 1998 WL 480161, at *3 (10th Cir. Aug. 7, 1998) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 6726, at 228 (2d ed. 1990)). Thus, plaintiff's assertion in his initial complaint concerning the Letter of Warning would be admissible against plaintiff at trial and plaintiff would be entitled to explain to the jury any inconsistency between his complaint and his subsequent pleadings. *See id.* Summary judgment, then, is not appropriate on this basis.

Because defendant has not set forth in its motion any additional arguments for the entry of summary judgment on plaintiff's age claim, the court denies defendant's motion for summary judgment with respect to plaintiff's claim that his age was a factor in defendant's decision to issue plaintiff the Letter of Warning. If defendant believes that the undisputed facts in this case support additional arguments for the entry of summary judgment on this claim, it may file a subsequent motion for summary judgment on or before Wednesday, November 22, 2006. Plaintiff's response, and any subsequent reply by defendant, shall be filed within the time periods provided in D. Kan. R. 6.1(e). In the meantime, the court will vacate the current trial setting of November 28, 2006 and the trial setting will be reset, if necessary, after the resolution of any subsequent motion for summary judgment or upon notification from defendant's counsel that defendant does not intend to file a subsequent motion for summary judgment.

3.    Retaliation

To state a prima facie case of retaliation, plaintiff is required to demonstrate that he

engaged in protected opposition to discrimination; that a reasonable employee would have found the challenged action materially adverse; and that a causal connection existed between the protected activity and the materially adverse action. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1315-16 (10th Cir. 2006) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006))).  Defendant asserts that summary judgment is warranted on plaintiff's retaliation claim because the claim is not based on "protected opposition to discrimination."  The court agrees.

Title VII protects individuals from retaliation only for opposing a practice made unlawful by Title VII. *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1267 (10th Cir. 2005) ("Title VII makes it an unlawful employment practice for an employer 'to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter.'") (quoting 42 U.S.C. § 2000e-3(a)).  Plaintiff contends that he engaged in protected opposition to discrimination when he testified on behalf of two coworkers in August 2001 at a union grievance hearing.  It is undisputed that the subject of the grievance hearing was defendant's decision to deny plaintiff's coworkers temporary light duty assignments while they were on crutches.  There is no evidence in the record that the union grievance hearing remotely touched on any practices made unlawful by Title VII.  Because plaintiff has failed to show the existence of a genuine issue of material fact as to whether he engaged in protected opposition to discrimination, summary judgment in favor of defendant on plaintiff's retaliation claim is warranted. *See Anderson v. Academy Sch. Dist. 20*, 2004 WL 2757938, at *3 (10th Cir. Dec. 3,

2004) (filing of grievance was not protected activity for purposes of Title VII retaliation claim where subject of grievance failed to include allegation of mistreatment motivated by any category protected by Title VII; thus, even if supervisor retaliated against plaintiff for filing grievance, that retaliation was not unlawful under Title VII).[7]

## IV.   Harassment Claims

Plaintiff contends that he was subjected to retaliatory harassment following his testimony at the August 2001 grievance hearing of his coworkers and that he was subjected to racial harassment.  Summary judgment is appropriate on plaintiff's retaliatory harassment claim for the reasons set forth above–plaintiff has not shown the existence of a genuine issue of material fact as to whether he engaged in protected opposition to discrimination.  The court turns, then, to plaintiff's racial harassment claim.

To survive defendant's motion for summary judgment on this claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations and quotations omitted).  In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the

---

[7]Plaintiff never suggests, either in the pretrial order or in his summary judgment materials, that he received the Letter of Warning in retaliation for his filing his first EEO complaint.  Indeed, plaintiff, on numerous occasions, explicitly identifies his testimony at the grievance hearing as the only allegedly protected activity in which he engaged.

circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The court analyzes the atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a "reasonable person in the plaintiff's position." *McCowan*, 273 F.3d at 923 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Plaintiff falls far short of establishing the existence of a racially hostile work environment. His list of grievances includes "none of the racial comments or ridicule that are hallmarks of hostile work environment claims." *See Trujillo*, 157 F.3d at 1214. Indeed, plaintiff testified that he could not recall any of his supervisors making any statements or remarks that plaintiff would consider racially derogatory or racially inappropriate.[8] The record is also devoid of evidence which would support an inference that any of the conduct about which plaintiff complains stemmed from racial animus. The thrust of plaintiff's harassment claim is based on the same conduct upon which he relied in an attempt to show pretext in connection with his

---

[8]In his affidavit filed in support of his response to the motion for summary judgment, plaintiff avers that, in August 2004, David Reid referred to plaintiff as "boy" and called him a "lazy bitch." While the "boy" reference is potentially probative of racial animus, plaintiff's allegations concerning Mr. Reid are not properly part of the actionable racial harassment claim before this court as those allegations concern acts not within the filing period of plaintiff's EEO complaint and those acts are not related by type, frequency or perpetrator to the acts within the filing period of plaintiff's EEO complaint. *See Duncan v. Manager, Dept. of Safety, City & County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005).

Letter of Warning; that is, plaintiff attempts to show that he was treated less favorably than Caucasian employees with respect to work-related issues such as job assignments, discipline and the level of scrutiny to which he was subjected on the job.  As explained above in the pretext analysis of plaintiff's race discrimination claim, plaintiff, without exception, has not shown that the Caucasian employees who were allegedly treated more favorably were similarly situated to plaintiff in the particular contexts asserted by plaintiff.  He also urges that he was singled out amongst all employees for mistreatment but, again, this does not establish that any mistreatment was based on race.

In short, the conduct about which plaintiff complains is insufficient to support plaintiff's racial harassment claim.  *See id.* (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence was "insufficient to create a jury question that his stressful working conditions were inflicted upon him because of racial animus"); *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (plaintiff's racial harassment claim failed where plaintiff did not show that ridicule stemmed from racial animus).  For the foregoing reasons, summary judgment is warranted on plaintiff's claim of racial harassment.

## V.    Constructive Discharge

Plaintiff also claims that he was constructively discharged from his employment with defendant.  A constructive discharge occurs when "an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004)

(citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004)). The court has concluded that defendant did not violate Title VII in connection with the issuance of the October 30, 2002 Letter of Warning. Moreover, the court has also concluded that plaintiff was not subjected to unlawful harassment within the meaning of Title VII. Thus, even in the light most favorable to plaintiff, the court cannot conclude that the conditions alleged made plaintiff's work environment such a difficult place to work that a reasonable person would have felt compelled to resigned.[9] Summary judgment in favor of defendant on this claim is warranted. *See Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003) (where allegations did not constitute violations of Title VII, court could not conclude that conditions alleged were so intolerable that a reasonable person would have felt compelled to resign).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment and motion to dismiss discrete claims for lack of jurisdiction (doc. 83) is **denied** with respect to plaintiff's claim that his age was a factor in defendant's decision to issue the Letter of Warning and is **otherwise granted**. As explained in the text of this memorandum and order, defendant may file a subsequent motion for summary judgment with respect to this claim on or before **Wednesday, November 22, 2006**. Plaintiff's response, and any subsequent

---

[9]While plaintiff may yet be able to show a genuine issue of material fact with respect to his claim that his age was a factor in the defendant's decision to issue the Letter of Warning, he nonetheless would not be able to show a constructive discharge based solely on the Letter of Warning, particularly when plaintiff remained employed with defendant for nearly two years after he received the Letter of Warning.

reply by defendant, shall be filed within the time periods provided in D. Kan. R. 6.1(e).

**IT IS FURTHER ORDERED BY THE COURT THAT** the current trial setting of November 28, 2006 is vacated and the trial setting will be reset as described in more detail in the text of this opinion.

**IT IS SO ORDERED.**

Dated this 25th day of October, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

25